James C. Mahan
U.S. District Judge

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LH HAGGERTY, | Case No. 2:17-CV-1412 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| KEOLIS TRANSIT NORTH AMERICA, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendant Amalgamated Transit Union, Local 1637's ("ATU") motion to dismiss. (ECF No. 4). Plaintiff LH Haggerty filed a response (ECF No. 7), to which ATU replied (ECF No. 8).

Also before the court is defendant Keolis Transit Services LLC's ("Keolis") motion to dismiss. (ECF No. 10). Plaintiff filed a response (ECF No. 21), to which Keolis replied (ECF No. 22).

**I.     Facts**

On June 28, 2013, Keolis hired plaintiff as a coach operator. (ECF No. 1). The ATU represented plaintiff for purposes of collective bargaining, and the terms and conditions of his employment were governed by defendant's collective bargaining agreement ("CBA") with the ATU. *Id*.

On January 23, 2015, Keolis terminated plaintiff's employment for receiving more than ten points for preventable accidents in a rolling eighteen month period.[1] *Id*.

---

[1] Section 23.4 of the CBA provides that "[e]mployees who obtain more than 10 points in a rolling 18 month period relative to the Preventable Accident Point Grid will be subject to

On January 24, 2015, the ATU filed Grievance #8949-K107 on plaintiff's behalf, asserting that at least two of the preventable accidents that led to plaintiff's termination were misclassified. (ECF Nos. 1 & 4). On February 11, 2015, the ATU president attended an informal settlement meeting regarding the grievance. (ECF No. 4). On March 1, 2015, a formal settlement meeting occurred. *Id*.

On June 26, 2015, the ATU informed plaintiff that it had settled the grievance, and that Keolis had agreed to reinstate plaintiff without back pay. (ECF Nos. 1 & 4).

On June 29, 2015, plaintiff informed Keolis that he had not agreed to the settlement the ATU obtained and refused to return to work with seven points in his file and without back pay. *Id*. At this time plaintiff also requested a copy of his file. (ECF No. 1). The same day, plaintiff emailed two of Keolis's employees about the file. *Id*. Each employee said the other had the file. *Id*.

On June 30, 2015, the ATU president emailed plaintiff a letter containing an offer of reinstatement with Keolis and instructing plaintiff to return to work by July 6, 2015. (ECF No. 4). Plaintiff did not return to work as instructed. Id. On July 20, 2015, plaintiff emailed the ATU international president regarding his rejection of the settlement reached with Keolis. *Id*. On July 24, 2015, the international president responded that it was unlikely that arbitration would yield better results. *Id*.

On April 19, 2017, plaintiff filed a complaint against Keolis and against the ATU. *Id*. The ATU removed the action to this court and Keolis consented to removal. *Id*.

**II.     Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

---

discharge. The Company reserves the right to establish the criteria necessary to classify an accident as a Class A, B, or C." (ECF No. 1)

**James C. Mahan**
**U.S. District Judge**

- 2 -

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

Plaintiff asserts the following causes of action: (1) civil conspiracy under § 1983, (2) violation of due process under § 1983, (3) fraudulent misrepresentation under § 1983, (4) common law fraud under § 1983, (5) breach of contract under § 1983, (6) a violation of both § 1983 and of

the Federal Service Labor–Management Relations Statute ("FSLMRS"), and (7) alleging a violation of § 1983 and of NRS 613.075. (ECF No. 1).

ATU asserts that plaintiff's § 1983 claims should be dismissed because ATU is a private actor and cannot be held liable under § 1983. (ECF No. 4).

Keolis similarly asserts that plaintiff's claims one through seven should be dismissed because they were brought under § 1983, which is not applicable to Keolis as a private actor. (ECF No. 10).

*a. § 1983 claims against private employers*

ATU asserts that plaintiff's § 1983 claims against ATU should be dismissed because unions are not private actors and plaintiff's complaint, therefore, fails to state a claim. (ECF No. 4).

Keolis asserts that plaintiff's claims one through seven should be dismissed because they were brought under § 1983 and defendant is a private employer. (ECF No. 10). Keolis further contends that plaintiff's assertion that Keolis has a contract with a government agency is not sufficient to establish that Keolis was acting under the color of state law. *Id*. Plaintiff asserts that his claims should not be dismissed because Keolis was acting under the color of state law due to a contract defendant held with a government agency. (ECF No. 21).

The Supreme Court of the United States has held that "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: Is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S. Ct. 2764, 2771 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982)). For this inquiry, courts look to whether "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

The Court has identified various factors that contribute to evaluating the closeness of the nexus between the state and the challenged action. For example, the Supreme Court has held:

> that a challenged activity may be state action when it results from the State's exercise of "coercive power," *Blum*, 457 U.S. at 1004, when the State provides "significant encouragement, either overt or covert," ibid. or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar*,

**James C. Mahan**
**U.S. District Judge**

- 4 -

> supra, at 941 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231, 1 L. Ed. 2d 792, 77 S. Ct. 806 (1957) (per curiam), when it has been delegated a public function by the State, cf., e.g., West v. Atkins, supra, at 56; *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-628, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991), when it is "entwined with governmental policies" or when government is "entwined in [its] management or control," *Evans v. Newton*, 382 U.S. 296, 299, 301, 15 L. Ed. 2d 373, 86 S. Ct. 486 (1966).

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 930 (2001).

Private entities may also be considered to be acting as an agent of the state if they perform a public function that is "traditionally the exclusive prerogative of the state." *Rendell-Baker*, 457 U.S. at 842 (quoting *Jackson*, 419 U.S. at 353). The Court has held that acts of private corporations or contractors whose business depends primarily or in part on contracts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id*. at 838. The Court in *Rendell-Baker* emphasized that even though the state was paying tuition for students to attend the defendant school, the relationship between the school and its teachers and counselors, like plaintiff, was unchanged. *Id*. at 841.

ATU asserts that it is a private actor and was not acting under color of state law. (ECF No. 4). While plaintiff argues that private actors can be liable under § 1983, he makes no allegations specific to ATU. (ECF No. 7). Plaintiff does not assert or allege facts that ATU is a state actor or that ATU was acting under color of state law at the time of the alleged violations.

Plaintiff asserts that Keolis had a contract with the Regional Transportation Commission ("RTC"), a government agency. (ECF No. 21). However, the claim of such a contract alone is insufficient to support the assertion that Keolis could be subject to liability under § 1983. Plaintiff has not alleged facts that his relationship with Keolis was changed in response to the government contract or that Keolis's conduct surrounding plaintiff's termination was affected by the government contract. Nor has plaintiff alleged that Keolis's contract with the government generally affected Keolis's operations or interactions with its employees.

Plaintiff cites to *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986), to assert that a private actor may act under the color of state law. (ECF No. 21). While this assertion is true under

James C. Mahan
U.S. District Judge

- 5 -

some circumstances, *Ort* specified in its holding that private actors may be considered to act under the color of state law when they perform "a function which is traditionally the exclusive prerogative of the state." *Id.* (quoting *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). Plaintiff has not pled sufficient facts to assert that Keolis has acted in such a manner.

Plaintiff has failed to assert sufficient allegations that § 1983 is applicable to ATU or Keolis as private entities.

In light of the foregoing, the court need not address Keolis's additional challenges to plaintiff's claims one through five.

*b. Applicability of the FSLMRS*

ATU and Keolis both argue that plaintiff's sixth cause of action should be dismissed as to both defendant's sixth cause of action because it alleges a violation of both § 1983 and of the FSLMRS, also known as Title VII of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7101 et seq. (ECF No. 10). ATU and Keolis assert that the FSLMRS applies only to federal agency employees, and Keolis is not a federal agency and plaintiff was not a federal agency employee when he worked for Keolis. *Id.*

The FSLMRS, 5 U.S.C. §§ 7101-7135 (2000), governs labor relations of federal agencies and for federal employees. *See Nat'l Treasury Emples. Union v. FLRA*, 418 F.3d 1068, 1069 (9th Cir. 2005).

The text of the statute states that "[i]t is the purpose of this chapter [5 USCS §§ 7101 et seq.] to prescribe certain rights and obligations of the *employees of the Federal Government* and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 USCS § 7101(b) (emphasis added).

As Keolis is a private entity and plaintiff has made no allegation that he was a federal employee at the time of the alleged violations, the FSLMRS is not applicable here.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

*c. Plaintiff's claim under NRS 613.075*

ATU asserts that plaintiff's seventh cause of action should be dismissed because NRS 613.075 because plaintiff has not alleged that ATU referred plaintiff, or any other employee, to an employer for employment. (ECF No. 4).

Keolis asserts that plaintiff's seventh cause of action should be dismissed because NRS 613.075(b)(4) requires only that an employer provide personnel records when an employee requests to view them within sixty days of the employee's termination and plaintiff failed to request them until more than three months after his termination. (ECF No. 10).

NRS 613.075(1) states that it applies to "[a]ny person or governmental entity who employs and has under his or her direction and control any person for wages or under a contract of hire, or any labor organization referring a person to an employer for employment."

NRS 613.075(4) states that "[u]pon termination of employment, an employer shall allow an employee to inspect the employee's records of employment within 60 days after his or her termination of employment and shall, if requested by that former employee within that period, furnish the former employee with a copy of those records."

According to plaintiff's complaint, he was terminated on January 23, 2015, and requested his personnel file on June 29, 2015. (ECF No. 1). June 29, 2015, was well past the 60 day window provided for by NRS 613.075. Therefore, plaintiff has not properly alleged a violation of NRS 613.075.

**IV. Conclusion**

In sum, the court will grant both ATU's and Keolis's motions to dismiss.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that ATU's motion to dismiss (ECF No. 4) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Keolis's motion to dismiss (ECF No. 10) be, and the same hereby is, GRANTED.

. . .

James C. Mahan
U.S. District Judge

- 7 -

1 The clerk shall enter judgment accordingly and close the case.

2 DATED March 8, 2018.

_____
UNITED STATES DISTRICT JUDGE